UNITED STATE DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SARA HAKIMI, a New York resident,<br><br>Plaintiff,<br><br>– against –<br><br>GUIDANT GLOBAL, a foreign company doing business in New York; IMPELLAM NA SUPPORT SERVICES, INC., a foreign company doing business in New York as IMPELLAM GROUP; CORPORATE EMPLOYMENT RESOURCES, INC., a foreign company doing business in New York; CAROL HECTOR, an individual residing in Michigan; KAREN SCHLEUDER, an individual residing in Michigan,<br><br>Defendants. | DOCKET NO.: 1:22-cv-8765<br><br><br><br>**COMPLAINT WITH JURY DEMAND** |

The Plaintiff, by and through the undersigned attorney, by way of Complaint against the above-named Defendants, hereby alleges the following:

## INTRODUCTION

1. This case arises from the professional slander, prohibited hiring practices and retaliatory interference with an expected professional contract experienced by the Plaintiff during the course of her interactions with Defendants while fulfilling the requirements of on-boarding for a staff position as a consultant with the Defendant IMPELLAM GROUP.

## PARTIES

2. PLAINTIFF SARA HAKIMI ("Plaintiff") is an individual residing in the State of New York in Manhattan.

3. DEFENDANT GUIDANT GLOBAL ("Defendant Guidant"), on information and belief, is a business entity doing business in New York with headquarters in Great Britain, UK and with business offices at 27777 Franklin Rd., Suite 600, Southfield, Michigan 48034.

4. DEFENDANT IMPELLAM NA SUPPORT SERVICES, INC., D/B/A IMPELLAM GROUP ("Defendant Impellam"), on information and belief, is a business entity owned by Defendant Guidant Global and which is doing business in New York, is a California stock corporation with headquarters in Great Britain, UK and a business office at 27777 Franklin Rd., Suite 600, Southfield, MI 48034.

5. DEFENDANT CORPORATE EMPLOYMENT RESOURCES, INC. ("Defendant CER"), is a Delaware corporation doing business in New York with a business address of 3475 Lenox Rd NE, Atlanta, GA 30326.

6. DEFENDANT CAROL HECTOR ("Defendant Hector"), on information and belief, is an individual employed by Defendant Guidant in the Human Resources Department as the Manager of Employee Experience, Talent Solutions and who works with candidates living in New York City, like the Plaintiff and whose business address is 27777 Franklin Road, Suite 600 Southfield, MI 48034 USA.

7. DEFENDANT KAREN SCHLEUDER ("Defendant Schleuder"), on information and belief, is an individual employed by Defendant Impellam as the North American Human Resources Manager and whose business address is 27777 Franklin Road, Suite 600 Southfield, MI 48034 USA.

## JURISDICTION & VENUE

**Subject Matter Jurisdiction**

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332, as the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

**Personal Jurisdiction**

9. This Court has personal jurisdiction over Defendant Guidant pursuant to Federal Rule of Civil Procedure ("FRCP") 4(k)(1)(A) and New York Civil Practice Law & Rules ("CPLR") § 302(1) because it transacts business within the State of New York or contracts to supply goods or services in the State; and pursuant to CPLR § 302(2), because it committed tortious acts within the State of New York, as alleged herein.

10. This Court has personal jurisdiction over Defendant Impellam pursuant to FRCP 4(k)(1)(A) and CPLR § 302(1) because it transacts business within the State of New York or contracts to supply goods or services in the State; and pursuant to CPLR § 302(2), because it committed tortious acts within the State of New York, as alleged herein.

11. This Court has personal jurisdiction over Defendant CER pursuant to FRCP 4(k)(1)(A) and CPLR § 302(1) because it transacts business within the State of New York or contracts to supply goods or services in the State; and pursuant to CPLR § 302(2), because it committed tortious acts within the State of New York, as alleged herein.

12. This Court has personal jurisdiction over Defendant Hector pursuant to FRCP 4(k)(1)(A) and CPLR § 302(2), because she committed tortious acts within the State of New York, as alleged herein.

13. This Court has personal jurisdiction over Defendant Schleuder pursuant to FRCP 4(k)(1)(A) and CPLR § 302(2), because she committed tortious acts within the State of New York, as alleged herein.

**Venue**

14. Venue in this Court is appropriate pursuant to 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of New York.

## GENERAL ALLEGATIONS

15. Plaintiff has been a banking and finance contractor for over twenty (20) years in the specialized area of regulatory reporting and risk reporting.

16. From September 25, 2019 through September 25, 2021, Plaintiff worked as a contractor for BNP Paribas Bank through Maltem Consulting Group. Thereafter, BNP Paribas Bank stopped working with Maltem Consulting and switched to working with Defendant Guidant as their preferred vendor for obtaining consultants.

17. Plaintiff's contract with BNP Paribas Bank was due to be renewed through Defendant Guidant because BNP Paribas Bank wanted to renew her contract as a consultant. Plaintiff's manager at BNP Paribas Bank obtained an agreement from Plaintiff that Plaintiff would return to work with BNP Paribas Bank and, relying on Plaintiff's agreement, that manager began a tedious process of getting approval to rehire Plaintiff as a contractor.

18. After obtaining approval to renew Plaintiff's contract to work as a consultant for BNP Paribas Bank, Plaintiff was instructed to work with Defendant Guidant to set her up as an employee for payroll during the contract.

19. As part of the hiring process with Defendant Guidant, the Plaintiff complied with all requests from "Maria Haddad" who was a personnelist with Defendant Guidant, specifically:

   a. Plaintiff submitted to a drug test;

   b. Plaintiff submitted five (5) professional references;

   c. Plaintiff provided signed permission for a background check to Equifax;

   d. Plaintiff provided her social security number, date of birth, full name and address;

   e. Plaintiff provided her academic records;

   f. Plaintiff registered with USCIS (United States Citizenship & Immigration Services) and provided Green Card details for Guidant Section 1 policy I-9 form purposes and Date of Birth, Social Security number, New York state driver's license for I-9 Section; and,

   g. Although not required, Plaintiff provided copies of her tax returns.

20. After submitting all of her documents itemized in the prior paragraph, the Plaintiff should have been finished with the application and document process and should have been hired by Defendant Guidant so she could promptly start her consulting contract with BNP Paribas Bank in the first week of December, 2021, as agreed to by the Plaintiff with the manager at the Bank who worked to renew her contract.

21. However, Defendant Guidant, through Ms. Haddad, unilaterally, and without any legal reason, imposed a second requirement that the Plaintiff ask a third party to submit her documentation again, and instructed the Plaintiff as follows:

   a. they (third party) must meet you in person;

   b. they (third party) can access the provided URL from a computer or a smart device;

      c. they (third party) can photograph or scan and upload copies of necessary documents; and

      d. they (third party) must be over the age of 21 and cannot be your family member.

22. In order for said third party to perform these functions imposed by Defendant Guidant, the Plaintiff would have to ask this third party to submit their own personal information into the Guidant system and the Plaintiff would have to further expose to this third party Plaintiff's private information.

23. The Plaintiff expressed concern to Ms. Haddad about this additional step, about the timing of beginning her contract and about the exposure of her personal information to a third party during the hiring process. The Plaintiff told Ms. Haddad that she had never been required to have a third party participate in her hiring process before. The Plaintiff also informed Ms. Haddad that she did not know a third party that she could utilize for the extra step in the hiring process imposed by Defendant Guidant.

24. At this point, the situation was escalated to Defendant Hector, the Manager of the Employee Experience in the Human Resources department of Defendant Guidant.

25. Defendant Hector called the Plaintiff on or about Friday, December 3, 2021, to discuss the hiring process with Defendant Guidant. During that phone call, Defendant Hector became increasingly annoyed with Plaintiff for engaging in protected activity by identifying improper hiring processes. Specifically, Plaintiff identified the following improper hiring processes:

      a. Defendant Guidant was pressuring the Plaintiff to provide her tax returns to them during the hiring process. Plaintiff pointed out that asking for tax returns is impermissible under the law;

  b. Defendant Guidant was asking the Plaintiff to use a third party to complete the hiring process which would unnecessarily expose Plaintiff's, and the third party's, personal identifying information;

  c. Plaintiff had never experienced a hiring process with these kinds of impositions by an employer before; and,

  d. Plaintiff questioned the process and pointed out that it was fragmented.

26. During that phone call, Defendant Hector became increasingly annoyed with the Plaintiff. At the end of that call, Defendant Hector agreed to process the Plaintiff's I-9 manually, so that the Plaintiff would not have to involve a third party. During that call, Defendant Hector agreed to send the Plaintiff the I-9 forms to enable the manual processing. However, Defendant Hector delayed sending the I-9 forms to the Plaintiff for almost two weeks, which was well after the Plaintiff was supposed to start her consulting contract with BNP Paribas Bank.

27. Unbeknownst to the Plaintiff, right after this phone call on or about, or after, December 3, 2021, upon information and belief, Defendant Hector directed, either verbally or in writing, personnel in HR at Defendant Guidant and/or personnel in at Defendant Guidant's Managed Service team and/or personnel in Defendant CER to communicate with the manager at BNP Paribas Bank that the Plaintiff was "being uncooperative and rude" during the hiring process and that Plaintiff "had not provided the necessary documents" for the hiring process, including not providing information for her I-9.

28. After the phone call with Defendant Hector on or about December 3, 2021, the Plaintiff waited for the I-9 forms to arrive. The documents arrived on December 14, 2021.

29. The Plaintiff filled out the I-9 forms and asked Defendant Hector if she could tell Defendant Hector her social security number over the phone rather than email it through an unsecured platform. Defendant Hector flatly refused and insisted that Plaintiff send the completed documents with her social security number written on the forms through unsecured email, which Plaintiff did on or about December 15, 2021. Then the Plaintiff waited and heard nothing. Then the Plaintiff resent all her documents to Defendant Hector on December 22, 2021.

30. At some point during this process, Plaintiff received a call from her BNP Paribas Bank manager who informed Plaintiff that HR at Defendant Guidant had informed this manager via an email that Plaintiff was very difficult, unprofessional, and rude during the hiring process and failed to provide all necessary documentation related to processing the I-9 with Defendant Guidant. Based upon these derogatory comments by Defendant Guidant's HR about the Plaintiff's professionalism during the hiring process, BNP Paribas Bank canceled the contract that was waiting for the Plaintiff.

31. Defendant Hector responded to the Plaintiff by email on December 22, 2021, and stated:

> I will have the I-9 team review the documents you have provided. However, I am not sure the role is still available due to the time it's taken to get this complete.

32. The Plaintiff did not hear anything more from Defendant Hector ever again.

33. After learning about the loss of her opportunity with BNP Paribas Bank due to Defendant Guidant's retaliatory negative comments about Plaintiff, Plaintiff wrote a letter to Defendant Guidant's HR department and received an email from Defendant Schleuder, the North America Human Resources Manager for Defendant Impellam.

34. Defendant Schleuder called the Plaintiff on or about January 20, 2022 to speak by phone.

35. During her phone call with Defendant Schleuder, the Plaintiff informed Defendant Schleuder of the series of problems she encountered during the hiring process, including the prohibited practices engaged in by Ms. Haddad and Defendant Hector, and Defendant Schleuder said, "I have your side of the story. Now I need to speak with Carol Hector and get her side."

36. The communications by Defendant Schleuder that followed on January 30, 2022 and January 31, 2022, informed the Plaintiff of the following:

    a. Defendant Schleuder admitted that there was confusion and delays in the hiring process for Plaintiff and that Ms. Haddad, Plaintiff's initial HR contact with Defendant Guidant, took "full responsibility" for these delays.

    b. Defendant CER would not continue the processing for her onboarding with them and/or Impellam based upon problems with her completing her I-9; and

    c. BNP Paribas Bank had been notified by Guidant's Managed Service team that her incomplete I-9 held up processing of Plaintiff's candidacy.

37. In her email to Plaintiff dated February 1, 2022, Karen Schleuder also stated that, "The final decision to cease on-boarding you through Corporate Employment Resources (Defendant CER) was delays in completing all employment compliance documents which included the I-9."

## COUNT 1

**WRONGFUL REQUEST FOR DOCUMENTS CONTAINING SALARY HISTORY**

**N.Y.C. Admin. Code § 8-107(25)**

**(Against all Defendants)**

38. Plaintiff repeats and realleges all of the allegations above as if set forth at length herein.

39. New York City Administrative Code prohibits employers from requesting documents or information from a candidate in order to obtain a salary history.

40. The Plaintiff was asked to provide her tax returns to the Defendants and, after the Plaintiff complained about this request for her tax returns, the Plaintiff was informed by Defendant Hector that "all candidates go through the same process," thereby admitting the practice was commonplace for the Defendants.

41. The Defendants, by engaging in a pattern and practice of asking candidates for copies of their tax returns, evidenced a willful or wanton negligence, or recklessness on the part of the Defendants and/or evidenced a conscious disregard of the rights of others and/or engaged in conduct so reckless as to amount to such disregard.

42. As a direct and proximate result of the Defendants' actions, the Plaintiff has suffered economic and emotional damages.

WHEREFORE, Plaintiff prays for judgment against the Defendants for the following:

    A.    compensatory damages;

    B.    consequential damages;

    C.    back pay;

    D.    front pay;

    E.    punitive damages;

    F.    reasonable attorney's fees and costs, as permitted by law;

    G.    pre- and post-judgment interest on all monetary awards; and

    H.    any other relief deemed just and equitable by the court.

## COUNT 2

## RETALIATION & WRONGFUL TERMINATION

### Pursuant to New York Labor Law § 740 & New York Executive Law § 296(7) & NYC Admin. Code § 8-107(7)

### (Against all Defendants)

43. Plaintiff repeats and realleges all of the allegations above as if set forth at length herein.

44. New York Labor Law § 740(2)(c) and New York Executive Law § 296(7) both prohibit an employer from retaliating against an employee for objecting to, or opposing, an unlawful practice.

45. The Defendants' request that the Plaintiff provide her I-9 and tax returns through an unsecure email channel was an unlawful practice.

46. The Defendants' request that the Plaintiff provide her salary history by requesting that the Plaintiff provide her tax returns was an unlawful practice under NYC Admin. Code § 8-107(25).

47. Plaintiff objected to the Defendants' unlawful requests, and she expressed such objections to HR personnel, as described above.

48. When Plaintiff expressed such objections, she was engaging in a protected activity under New York Labor Law § 740(2)(c), New York Executive Law § 296(7) and NYC Admin. Code Title 8.

49. Because Plaintiff engaged in that protected activity, Plaintiff was subjected to adverse employment actions, including being professionally slandered (i.e. she was "rude" and "uncooperative", and "failed to provide necessary information"), denied a consultancy contract, and being discharged from a *pro forma* onboarding process with Defendant Guidant, as described above.

50. These adverse employment actions constitute unlawful retaliation and wrongful termination.

51. As a direct and proximate result of the unlawful retaliation and wrongful termination, Plaintiff has suffered economic and emotional damages.

WHEREFORE, Plaintiff prays for judgment against Defendants for the following:

 A. compensatory damages;

 B. consequential damages;

 C. back pay;

 D. front pay;

 E. punitive damages;

 F. reasonable attorney's fees and costs, as permitted by law;

 G. pre- and post-judgment interest on all monetary awards; and

 H. any other relief deemed just and equitable by the court.

## COUNT 3

### AIDING & ABETTING
### RETALIATION & WRONGFUL TERMINATION

**Pursuant to New York Executive Law § 296(6) and NYC Admin. Code § 8-107(7)**

**(Against Defendants Hector and Schleuder)**

52. Plaintiff repeats and realleges all of the allegations above as if set forth at length herein.

53. New York Executive Law § 296(6) prohibits anyone from aiding and abetting unlawful employment practices, including retaliation for engaging in protected activity (complaining about prohibited practices) and wrongful termination.

54. Defendants Hector and Schleuder each aided and abetted the retaliation against Plaintiff, and the wrongful termination of Plaintiff's candidacy, by engaging in the conduct alleged above.

55. As a direct and proximate result of the aiding and abetting, Plaintiff has suffered economic and emotional damages.

WHEREFORE, Plaintiff prays for judgment against Defendants Hector and Schleuder for the following:

    A.    compensatory damages;

    B.    consequential damages;

    C.    back pay;

    D.    front pay;

    E.    punitive damages;

    F.    reasonable attorney's fees and costs, as permitted by law;

    G.    pre- and post-judgment interest on all monetary awards; and

    H.    any other relief deemed just and equitable by the court.

## COUNT 4

**NEGLIGENT HIRING, RETENTION, SUPERVISION AND/OR TRAINING**

**(Against Defendants Carlisle, Guidant & Impellam)**

56. Plaintiff repeats and realleges all of the allegation above as if set forth at length herein.

57. Defendants owed a duty of care to Plaintiff because, as consultant being on-boarded for a renewed consultancy with BNP Paribas Bank, she was dependent upon the Defendants to process her candidacy.

58. Defendants' duty of reasonable care included a duty to guard against any use of illegal, or prohibited, employment practices during the on-boarding of consultants working for them and their clients, like BNP Paribas Bank.

59. Defendants' duty of reasonable care to the Plaintiff included a duty to guard against any use of illegal or prohibited employment practices during her on-boarding as a known consultant for their client, BNP Paribas Bank.

60. That standard of care encompassed the duty to have a secure channel for the transmission of protected personal identifying information.

61. That standard of care encompassed the duty to train human resource personnel to avoid prohibited practices during the course of on-boarding consultants like the Plaintiff.

62. That standard of care included a duty to receive complaints about prohibited practices during the on-boarding process in a way that honors the complainant, takes their concerns seriously, remedies legitimate issues and protects the professional status of the complainant during the complaint process and thereafter.

63. All of these duties of the Defendants were breached by the Defendants when:

    a. The Plaintiff was asked to provide personal identifying information through a channel designated by employees of the Defendants and said designated channel was an unsecure email channel.

    b. The Plaintiff was asked to provide her tax returns;

    c. The Plaintiff was labeled as, and slandered as, "rude" and "uncooperative" by the employees and HR personnel of the Defendants in statements made by Defendant Hector, or other employees of the Defendants, to managers and/or HR personnel at BNP Paribas Bank.

    d.   The labeling and slander against the Plaintiff by the employees and HR personnel of the Defendants was retaliatory against the Plaintiff who rightfully pointed out illegal requests and practices and, while doing so, was engaged in a protected activity.

64. As a result of the Defendants' actions, the Plaintiff lost the consultantcy with BNP Paribas Bank.

65. The injuries suffered by Plaintiff were directly and proximately caused by Defendants' actions through its managers, employees and HR personnel.

66. Moreover, Defendants breached their duty to the Plaintiff by failing to supervise and/or train Defendants Hector and Schleuder with reasonable care so as to prevent Defendants Hector and Schleuder from intentionally harming others or from creating an unreasonable risk of harm to others.

67. Defendants knew or should have known of their ability to supervise and/or train Defendants Hector and Schleuder and the necessity and opportunity for providing that supervision and/or training.

68. Therefore, Defendants were negligent in hiring, retaining, supervising, and/or training Defendants Hector and Schleuder.

69. As a direct and proximate result of Defendants' negligence, Plaintiff has suffered economic and emotional damages.

70. Defendants' negligence and failure to prevent prohibited practices engaged in by its employees was egregious such that it amounts to willful indifference.

WHEREFORE, Plaintiff prays for judgment against Defendants for the following:

    A.   compensatory damages;

B. back pay;

C. front pay;

D. punitive damages;

E. reinstatement;

F. reasonable attorney's fees and costs to the extent permitted by law;

G. pre- and post-judgment interest on all monetary awards; and

H. any other relief deemed just and equitable by the court.

## COUNT 5

### VICARIOUS LIABILITY

**(Against Defendants Guidant, Impellam & CER)**

71. Plaintiff repeats and realleges all of the allegations above as if set forth at length herein.

72. Defendants were the employer which employed Defendant Hector who admitted that all consultants she on-boards are put through the same prohibited practices as the Plaintiff was.

73. Defendant Hector committed the tortious acts alleged herein within the scope of her employment relationship with Defendants.

74. Defendant Hector committed the tortious acts alleged herein while acting in furtherance of her duties to her employer.

75. Defendants either intended for Defendant Carol Hector to commit the tortious acts alleged herein, or acted with recklessness, or failed to exercise reasonable care, in supervising Defendant Carol Hector.

76. At all relevant times, Defendants retained control over the manner and means of the doing of the work that Defendant Hector performed.

77. On information and belief, Defendants knew or should have known of its ability to control Defendant Hector, and of the necessity and opportunity for exercising such control.

78. On information and belief, Defendants failed to exercise reasonable care so as to control Defendant Hector in order to prevent her from intentionally harming others or from creating an unreasonable risk of harm to others.

79. The tortious acts committed by Defendant Hector took place on premises which she was privileged to enter as a result of her employment relationship with Defendants.

80. On information and belief, Defendants demonstrated willful indifference towards the tortious acts committed by Defendant Hector.

81. The injuries suffered by Plaintiff were directly and proximately caused by those tortious acts.

82. Moreover, on information and belief, Defendants knew, or had reason to know, or could have determined with reasonable investigation, that Defendant Hector had character traits for committing the tortious acts and omissions alleged herein, in that Defendant Hector had stated, as an HR personnel, that "all candidates" went through the same process as the Plaintiff was put through.

83. On information and belief, Defendants could reasonably have foreseen that Defendant Hector's defective character traits created a risk of harm to other persons, such as Plaintiff.

84. The injuries suffered by Plaintiff were directly and proximately caused by Defendant Hector's poor character traits.

85. For all of the foregoing reasons, Defendants are vicariously liable to Plaintiff for all of her damages caused by Defendant Hector's tortious and intentional actions, by operation of the doctrine of *respondeat superior*.

WHEREFORE, Plaintiff prays for judgment against Defendants for the following:

    A.    compensatory damages;

    B.    consequential damages;

    C.    back pay;

    D.    front pay;

    E.    punitive damages;

    F.    reasonable attorney's fees and costs to the extent permitted by law;

    G.    pre- and post-judgment interest on all monetary awards; and

    H.    any other relief deemed just and equitable by the court.

## COUNT 6

**TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**

**(Against All Defendants)**

86. Plaintiff repeats and realleges all of the allegations above as if set forth at length herein.

87. The conduct of the Defendants interfered with the Plaintiff's economic prospects of having a renewed consulting contract with BNP Paribas Bank, which Bank had agreed with the Plaintiff to "have her back as a consultant", had directed the Plaintiff to engage in on-boarding with a new vendor, the Defendant Guidant, and which had a contract waiting for the Plaintiff to step right into after *pro forma* onboarding by the Defendants.

88. BNP Paribas Bank had anticipated, and informed the Plaintiff, that the consulting contract for the Plaintiff would start on or about December 1, 2021.

89. As a result of the Defendants' actions, BNP Paribas Bank decided, after years of working the Plaintiff, not to work with the Plaintiff or contract for her as a consultant.

WHEREFORE, Plaintiff prays for judgment against Defendants for the following:

    A.  compensatory damages;

    B.    consequential damages;

    C.    back pay;

    D.    front pay;

    E.    punitive damages;

    F.    reasonable attorney's fees and costs to the extent permitted by law;

    G.    pre- and post-judgment interest on all monetary awards; and

    H.    any other relief deemed just and equitable by the court.

## JURY DEMAND

The Plaintiff requests and demands a jury trial in this matter.

## DEMAND TO PRESERVE EVIDENCE

Plaintiff hereby demands that all Defendants preserve all physical and electronic documents, things, and information relating in any way to Plaintiff's employment, to the Plaintiff's claims set forth herein, or to the defenses of same, including but not limited to any physical or electronic compilation of data, stored in any medium, from which information can be obtained either directly or, if necessary, after translation into a reasonably usable form, and shall include originals and all drafts, versions, and non-identical copies, as well as any associated meta-data, and shall further include information contained in emails, text messages, or on websites or in social media posts or communications, as well as any physical devices containing such information.

Failure to preserve documents, things, and information as demanded above will result in separate claims for spoliation of evidence, for appropriate adverse inferences, and for any other appropriate sanctions, and it shall not be a defense to such claims, inferences, or sanctions that

Defendant lost access to documents, things, and information by trading in a phone or device in order to receive an upgraded phone or device.

**EMPLOYMENT LAW GROUP, LLC**

s/ *Paul S. Grosswald*

Dated: October 14, 2022

_____
Paul S. Grosswald, Esq.
350 Main Street
West Orange, NJ 07052
Phone: (917) 753-7007
Fax: (973) 744-0719
Email: employmentlawyergroup@gmail.com

-and-

188 Grant St., Unit 170
New York, NY 10013
  *Attorneys for Plaintiff*